U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 MAY 28  PM 3:20

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CHARLES NASHEF,<br><br>    Plaintiff,<br><br>    v.<br><br>AADCO MEDICAL, INC.,<br>ROBERT MARCHIONE, and<br>ANTHONY SKIDMORE,<br><br>    Defendants. | Case No. 5:12-cv-243 |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (COUNTS TWO AND THREE), AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION TO AMEND COUNTERCLAIM**
(Doc. 17, 32)

Pending before the court are two related motions: a motion for judgment on the pleadings for Counts Two and Three of the Verified Counterclaim, filed by Plaintiff Charles Nashef (Doc. 17), and a cross-motion to amend the Verified Answer and Counterclaim to add facts and three additional counterclaims, filed by Defendants AADCO Medical, Inc. ("AADCO"), AADCO President and Chief Executive Officer Robert Marchione, and AADCO Vice President Anthony Skidmore (Doc. 32).[1]

Mr. Nashef filed a Verified Complaint setting forth several claims that arise out of the termination of his employment with AADCO. Defendants filed a Verified Answer and Counterclaim that asserts counterclaims for conversion, breach of contract, and abuse of process. Mr. Nashef moves for judgment on the pleadings with regard to the counterclaims set forth in Count Two (breach of contract) and Count Three (abuse of

---

[1] In a separate motion, Mr. Marchione and Mr. Skidmore move to dismiss several counts set forth in Mr. Nashef's Complaint. (Doc. 8.) The court has addressed this motion in an Opinion and Order dated April 29, 2013.

process) (Doc. 17), contending that he is entitled to judgment as a matter of law in his favor on both of these counterclaims because Defendants have failed to state a claim upon which relief may be granted. Defendants oppose the motion, arguing that both counterclaims are "sufficiently pled" to survive a motion for judgment on the pleadings. (Doc. 30 at 3-6.)

In the alternative and as a separate request, Defendants seek to amend their counterclaims to plead additional facts that Defendants contend would cure the alleged deficiencies in Counts Two and Three. In addition, Defendants seek to add three additional counterclaims for malicious prosecution (Count Four), negligent misrepresentation (Count Five), and a violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2481w ("VCFA") (Count Six). (Doc. 32.) Mr. Nashef opposes the motion to amend on the grounds that the proposed amendments are futile. (Doc. 35 at 5-9; Doc. 43.)

The court heard oral argument on February 4, 2013. Mr. Nashef is represented by Stephen D. Ellis, Esq. and Robert D. Mabey, Esq. Defendants AADCO, Mr. Marchione, and Mr. Skidmore are represented by Kerin E. Stackpole, Esq. and Kristina Roomet Brines, Esq.[2]

I. **Factual and Procedural Background.**

The following facts are derived from the allegations set forth in Defendants' Verified Counterclaim. AADCO is a Vermont corporation engaged in the business of designing, manufacturing, and selling medical imaging products. In March 2011, Mr. Nashef was hired as AADCO's Director of Sales by Mr. Marchione and Mr. Skidmore.

Defendants allege that after Mr. Nashef began his employment with AADCO in February 2011, he failed to perform his job duties in a satisfactory manner. They allege that Mr. Nashef's deficiencies included failing to provide weekly reports of sales and monthly summary sales management reports, both of which are allegedly standard in the industry. Mr. Nashef also allegedly ignored management's requirements that he review

---

[2] Attorney David N. Cole withdrew his appearance for Defendants following oral argument.

daily and monthly reports from his sales team, which resulted in Mr. Nashef's unawareness of his sales teams' needs. Defendants further allege that Mr. Nashef "managed his sales team as though he was the sole decision maker," while ignoring upper management, which "adversely affected not only Mr. Nashef's own ability to maximize returns on his [teams, but also] adversely affected others within AADCO." (Doc. 9 at 11, ¶ 8.) As another example of "disregard of AADCO's management directives," Defendants claim AADCO approved Mr. Nashef's application for a "Veterinary Trade Show Budget," but that Mr. Nashef then failed to develop a "Veterinary Market Sales Plan" and failed to garner any subsequent leads from trade shows. *Id.* at 11, ¶ 9. Although Defendants allegedly attempted to assist Mr. Nashef in improving his performance, Defendants claim that Mr. Nashef's performance did not improve.

Defendants further assert that Mr. Nashef failed to perform certain specific tasks, including registering AADCO products with the Food and Drug Administration ("FDA"). *Id.* at 11-12, ¶¶ 10-12. Due to his purported experience with lighting, Mr. Nashef was also responsible for obtaining Underwriters Laboratories ("UL") certification and FDA 510(k) determination of lighting products. Defendants allege that Mr. Nashef assured Defendants that the products were registered or certified when, in fact, they were not, and that Defendants then had to "step in and finish" registration and certification. *Id.* Finally, Mr. Nashef was assigned to negotiate with certain Chinese manufacturers for the production of some AADCO products, but allegedly failed to complete those negotiations, necessitating the intervention of Mr. Marchione and Mr. Skidmore to complete the negotiations themselves.

As a result of Mr. Nashef's alleged deficiencies in performance, Defendants claim that AADCO could not meet the forecasted sales goals that Mr. Nashef set for 2012. In turn, because of attrition and the adverse impacts on recruitment allegedly caused by Mr. Nashef, AADCO's sales staff was "cut in half" within months after Mr. Nashef started as Director of Sales. *Id.* at 10, 11, ¶¶ 4, 7. In their motion to amend, Defendants seek to add allegations that AADCO had no tangible sales growth in 2011 and that AADCO lost half

of its sales team and fifty-four percent of its sales to Original Equipment Manufacturers while Mr. Nashef was Director of Sales.

During his employment, Mr. Nashef was allegedly repeatedly warned in writing that his behavior was unacceptable and that he risked termination if he did not take steps to improve his performance. On May 8, 2012, Mr. Nashef received a written warning from Mr. Marchione for Mr. Nashef's alleged "extreme and disruptive behavior" in response to what Defendants label as "constructive criticism" concerning Mr. Nashef's management of the sales department. *Id.* at 10, ¶ 2. After Mr. Nashef allegedly failed to alter his conduct, AADCO terminated his employment on August 10, 2012.

After his termination, Mr. Nashef allegedly retaliated against Defendants by failing to return AADCO property, including proprietary and confidential information. In addition, Mr. Nashef filed this lawsuit against Defendants on October 25, 2012. In their motion to amend, Defendants seek to add the allegation that Mr. Nashef "filed and served on [Defendants] a Verified Complaint containing statements Mr. Nashef knew to be false and motivated by Mr. Nashef's desire to exact revenge on [Defendants]." (Doc. 32-1 at 12, ¶ 15.)

## II. Conclusions of Law and Analysis.

The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and thus is required to apply Vermont law to the substantive issues raised by the parties' state law claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005); *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 n.4 (2d Cir. 2006).

### A. Mr. Nashef's Motion for Judgment on the Pleadings.

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In each case, the court must 'accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor.'" *Id.* (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to

'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleadings standards enunciated in *Twombly* and later in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), therefore apply to a motion for judgment on the pleadings, and so the court must determine whether the "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. However, the court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.

"Determining whether a [pleading] states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation marks omitted). In applying these standards, the court's analysis is confined to "the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### 1. Prior Breach of Contract by Mr. Nashef (Count Two).

In Count Two, Defendants allege that Mr. Nashef breached his obligations under his employment contract when he "consistently failed to abide by reasonable management directives" and "failed without legal excuse to perform the obligations and duties that form the essence of his employment contract." (Doc. 9 at 13, ¶¶ 19-20.) Defendants therefore claim that AADCO was "entitled . . . to cancel that employment contract on the basis of [Mr. Nashef's] substantial prior nonperformance and material breach of contract." *Id.* at 13, ¶ 21. Mr. Nashef seeks judgment as a matter of law in his favor, arguing that an employer may not "impose 'poor performance' liability on a former employee." (Doc. 17 at 5-6.) He also argues that the claim in Count Two is actually an affirmative defense for breach of contract. He notes that Defendants do not seek any affirmative relief in Count Two, such as indemnification or damages, but rather

Defendants allege that AADCO was entitled to cancel Mr. Nashef's employment contract due to his breach.

As an initial matter, a plaintiff is "the master of his [or her] complaint," *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010), and is "always free to choose" how to plead his or her case. *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216 n.7 (2d Cir. 2013) (rejecting defendants' argument that plaintiff "surreptitiously" relied on statutory sections not listed in complaint and concluding that "the mere fact that [plaintiff] *could have* utilized some other statutory or procedural mechanism to recover . . . is beside the point"); *see also Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 90 (2d Cir. 2010) (concluding plaintiffs "were entitled to construct their complaint in this fashion," which was to "allege[] plain vanilla employment discrimination," "regardless of the existence of collective agreement" under which plaintiffs could have sought relief). "It has been the law for decades that 'the party who brings a suit is master to decide what law he will rely upon.'" *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

As a corollary to the foregoing principle, a defendant cannot simply re-characterize the nature of a plaintiff's claim or the legal basis for that claim, otherwise "the plaintiff would be master of nothing." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-99 (1987) (concluding that, when plaintiffs sued for breach of individual employment contracts, "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law," even though plaintiffs could have sued under federal law to enforce rights in an existing collective bargaining agreement); *see also Pan Am. Petroleum Corp. v. Super. Ct.*, 366 U.S. 656, 663-66 (1961) (rejecting defendant's assertion to re-cast plaintiffs' claim for breach of natural gas contract as a federal claim when defendant argued that "there exists a scheme of federal regulation of interstate transmission of natural gas" and that plaintiffs should have invoked this "federal right").

Under Fed. R. Civ. P. 8(c)(2), however, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice

6

requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." *Id.*; *see also Wursthaus, Inc. v. Cerreta*, 539 A.2d 534, 536-37 (Vt. 1987) (affirming state trial court's decision to construe a counterclaim as an affirmative defense under V.R.C.P. 8(c), which is nearly identical to Fed. R. Civ. P. 8(c)(2)). "The purpose of Rule 8(c)(2) is to correct technical pleading errors and to ignore improper designations in order to interpret a pleading in accordance with its true character." *Gallagher's NYC Steakhouse Franchising, Inc. v. NY Steakhouse of Tampa, Inc.*, 2011 WL 6034481, at *9 (S.D.N.Y. Dec. 5, 2011) (internal quotation marks and alterations omitted). Mr. Nashef, however, cites no case in which a court has relied on Rule 8(c)(2) to convert a party's counterclaim to an affirmative defense at the opposing party's request.[3] Assuming arguendo that such authority exists, Defendants' failure to request affirmative relief such as damages does not require this court to designate Defendants' breach of contract claim as an affirmative defense. The Restatement (Second) of Contracts provides that even though "a breach of contract by a party against whom it is enforceable always gives rise to a claim for damages," there are instances "in which the breach causes no loss," or "in which loss is caused but recovery for that loss . . . cannot be proved with reasonable certainty." Restatement (Second) of Contracts § 346 (1981). In such instances, a party is entitled to nominal damages. *Id.* Vermont follows the Restatement, and holds that "[n]ominal damages is the appropriate remedy when there has been an invasion of a right,

---

[3] In the few cases in which a court in the Second Circuit has addressed Rule 8(c)(2), the courts have refused a party's request to designate the party's own counterclaim as a defense or a defense as a counterclaim, primarily out of concern that the opposing party was without notice. *Compare Gallagher's*, 2011 WL 6034481, at *9 (declining at defendant's request to convert defendant's affirmative defense into counterclaim because the affirmative defense did not assert any facts or claims similar to counterclaims defendants already asserted and so plaintiff would have been without notice of the proposed counterclaim); *with Kamat v. Kurtha*, 2008 WL 5505880, at *7 (S.D.N.Y. Apr. 14, 2008) (determining there was no prejudice to defendant in construing plaintiff's claim of laches as an affirmative defense when defendant was on notice of the claim because plaintiff raised it in complaint and defendant addressed it in answer); *see also Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823, at *4-5 (S.D.N.Y. Nov. 24, 2008) (following plaintiff's request that court designate defendant's counterclaims as affirmative defenses, court instead dismissed the counterclaims entirely because they "could not stand on [their] own" and "because they [did] not present an independent case or controversy that would survive a dismissal of [plaintiff's] claim" against defendant).

yet no actual damage occurred." *Doria v. Univ. of Vt.*, 589 A.2d 317, 319 (Vt. 1991). Specifically, in a case alleging breach of an employment contract, the Vermont Supreme Court expressly rejected an employer's argument that an employee could not recover for a breach of the employment contract when the employee had been paid in full. *See Herrera v. Union No. 39 Sch. Dist.*, 2006 VT 83, ¶ 21, 181 Vt. 198, 210, 917 A.2d 923, 932-33. The court explained that the employee was still "entitled to at least nominal damages" for the breach. *Id.*; *see also Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 20, 181 Vt. 535, 539, 915 A.2d 759, 765 (allowing nominal damages when landlord breached lease but tenant did not provide evidence of "harm"). Moreover, Defendants seek to add facts that support a claim of actual damages from Mr. Nashef's alleged breach of contract.[4] The court, therefore, will not designate Count Two as an affirmative defense.

Mr. Nashef next contends that Defendants cannot seek affirmative relief from a former employee for poor performance. To support this contention, Mr. Nashef cites decisions from other jurisdictions which have rejected a cause of action on this basis. *See Fried v. Aftec, Inc.*, 587 A.2d 290, 296-97 (N.J. Super. 1991) (holding that, absent a special agreement, an employee whose best efforts resulted in poor performance causing a loss to employer does not become liable for such losses in a breach of contract action); *In re Petersen*, 296 B.R. 766, 780-81 (Bankr. C.D. Ill. 2003) (citing *Fried* and noting that an "employer's remedy is to fire the employee for ineptness or lack of diligence"); *see also Nowicki v. Toll Bros., Inc.*, 2012 WL 14258, at *1 (E.D.N.Y. Jan. 4, 2012) (concluding that defendants' contract claim based on former employee's poor work performance was "an attempted wage deduction prohibited by New York law").

Although Defendants do not cite any Vermont authority that recognizes a cause of action for a breach of contract brought by an employer against an employee for poor performance, at the pleading stage a court "should tread with caution in dismissing a cause of action . . . based on a novel theory of the law." *Antonio v. Pedersen*, 2012 WL

---

[4] Specifically, Defendants seek to add the allegations that AADCO had no tangible sales growth in 2011 and that AADCO lost half of its sales team and fifty-four percent of its sales to Original Equipment Manufacturers while Mr. Nashef was Director of Sales. (Doc. 32-1 at 10-11, ¶ 5.)

8

4320674, at *9 (D. Vt. Sept. 20, 2012); *see also Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition."). Here, Defendants do not merely allege that Mr. Nashef's work performance was generally poor; they allege that Mr. Nashef willfully refused to comply with specific employment obligations in breach of his employment contract and that "Mr. Nashef has failed to return AADCO's property, some of which includes AADCO's proprietary and confidential information, despite demand and in violation of his employment contract with AADCO." (Doc. 9 at 12, ¶ 13.) Under Vermont law, an employer may bring a claim against a current or former employee for breach of a duty to refrain from disclosing confidential information. *See Omega Optical, Inc. v. Chroma Tech. Corp.*, 800 A.2d 1064, 1066-67 (Vt. 2002). Indeed, this duty is now codified in part as a statutory claim under the Vermont Trade Secrets Act. *See* 9 V.S.A. §§ 4601-4609; *see also Dicks v. Jensen*, 768 A.2d 1279, 1282 (Vt. 2001); *but see Maguire v. Gorruso*, 800 A.2d 1085, 1091 n.4 (Vt. 2002) (noting Vermont Trade Secrets Act would not apply to claims relating to other forms of employer's confidential information if that information does not fit the Act's definition of a trade secret). Accordingly, while it is not clear that the Vermont Supreme Court would recognize a claim brought by an employer against a former employee solely for poor performance, in this case, that claim is coupled with an allegation that Mr. Nashef has failed to return his employer's property, including proprietary and confidential information, an allegation for which Vermont law provides a cause of action. *See Omega Optical, Inc.*, 800 A.2d at 1066-67; *Maguire*, 800 A.2d at 1091 n.4. For the foregoing reasons, Mr. Nashef's motion for judgment on the pleadings with regard to Count Two is DENIED.

### 2. Abuse of Civil Process (Count Three).

In Count Three, Defendants allege that Mr. Nashef has committed an actionable abuse of process by filing the present action. Defendants further seek to amend their counterclaim to allege that, "[u]pon his termination of employment, Mr. Nashef filed and served on [Defendants] a Verified Complaint containing statements Mr. Nashef knew to be false and [motivated] by Mr. Nashef's desire to exact revenge on AADCO,

Marchione, and Skidmore for terminating his employment." (Doc. 32-1 at 12, ¶ 15.) Because they contend Mr. Nashef's lawsuit was intended only to harass them, Defendants argue that his alleged false "allegations cannot be considered the proper use of [Mr. Nashef's] right of access to legal process or motivated by a desire to attain justice." (Doc. 30 at 6.) Mr. Nashef responds that the filing of a lawsuit, even if frivolous and brought for an ulterior motive, cannot constitute an abuse of process.

Under Vermont law, "a [party] alleging the tort of abuse of process must plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Jacobsen v. Garzo*, 542 A.2d 265, 268 (Vt. 1988). In *Jacobsen*, the defendant filed an abuse of process counterclaim after the plaintiff filed a lawsuit against him, asserting that the plaintiff filed the lawsuit with "malicious intent." *Id.* In setting forth the standard in Vermont for an abuse of process claim, the Vermont Supreme Court adopted the reasoning of *Holiday Magic, Inc. v. Scott*, 282 N.E. 2d 452 (Ill. App. 1972), which held "that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process." *Id.* at 456. The *Jacobsen* court rejected the reasoning of *Three Lakes Association v. Whiting*, 255 N.W.2d 686 (Mich. App. 1977), which held that a claim for abuse of process is cognizable when the plaintiff alleges that the defendant initiated a lawsuit for an ulterior and collateral purpose. *Jacobsen*, 542 A.2d at 267. The Vermont Supreme Court "conclude[d] that such misuse or abuse of the process itself must be established and that the filing of a lawsuit may not be the predicate for a claim of tortious interference" when a defendant was alleged to have brought a frivolous lawsuit for an improper purpose but had initiated no further legal processes other than "the summons which notified plaintiff of the action[.]" *Id.* at 266, 268; *see also Broad. Music, Inc. v. Hunter Broad., Inc.*, 1984 WL 2125, at *1 (D. Vt. May 29, 1984) ("It is not sufficient, however, merely to allege that an action was brought with improper motives. There must be allegations of 'irregular steps taken under cover of process after its issuance, and damage resulting therefrom.'") (quoting *Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp.*, 53 F.2d 359, 361 (2d Cir. 1931)).

The *Jacobsen* opinion appears to reflect the majority view. *See Jacobsen*, 542 A.2d at 267 ("A majority of courts in other jurisdictions appear to have reached a like conclusion.") (collecting cases); *see also Bus. Publ'ns, Inc. v. Stephen*, 666 A.2d 932, 147 (N.H. 1995) ("Despite the plaintiff's contention, the general rule is that the initiation of vexatious civil proceedings known to be groundless is not abuse of process, but is governed by substantially the same rules as the malicious prosecution of criminal proceedings.") (internal quotation marks omitted) (collecting cases). More importantly, *Jacobsen* is controlling precedent and the facts of the instant case are indistinguishable. As in *Jacobsen*, Defendants here claim that Mr. Nashef's lawsuit was filed for the purpose of harassment, but the "filing of the lawsuit and the summons which notified [Defendants] of the action accomplished that which the law intends," namely to initiate the immediate proceedings. *Jacobsen*, 542 A.2d at 268; *see also Blydenstein v. Precourt*, 541 A.2d 1198, 1198 (Vt. 1988) (finding that even though "defendant filed the notice of appeal with an ulterior purpose or improper motive[,]" there "was no abuse of the process itself; the notice of appeal accomplished that which it is legally intended to do, namely, to bring the cause to this Court for review"). Defendants do not allege any misuse of the court's process itself. *See Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 97 F. Supp. 2d 571, 573-74 (D. Vt. 2000) (denying motion to dismiss defendant's abuse of process counterclaim when defendant alleged that the plaintiff law firm "misused [a firm attorney's] status as member of the Police Commission to improperly use a court process (the noise citation) for the ulterior purpose of meeting an evidentiary burden in a civil action seeking unspecified money damages") (internal quotation marks omitted); *see also Levinsky v. Diamond*, 442 A.2d 1277, 1280 (Vt. 1982), *overruled on other grounds by Muzzy v. State*, 583 A.2d 82, 83 n.1 (Vt. 1990) (finding abuse of process when a former Attorney General maliciously caused federal warrants to issue for plaintiff's arrest, while conceding that he had no evidence for doing so).

Because Defendants have alleged only that the filing of the present lawsuit was frivolous and brought for an improper purpose, not that any processes of the court have themselves been used improperly, Defendants' abuse of civil process counterclaim fails

11

to state a claim upon which relief may be granted. Mr. Nashef's motion for judgment on the pleadings with regard to Count Three is GRANTED.[5]

### B. Defendants' Motion for Leave to Amend.

Claiming any amendments would be futile, Mr. Nashef opposes Defendants' motion for leave to amend their counterclaim to supplement their existing allegations and to add new counterclaims. Defendants counter that they have plausibly alleged claims of malicious prosecution, negligent misrepresentation, and a violation of the VCFA and that, at this nascent stage of the proceedings, leave to amend should be granted.

Fed. R. Civ. P. 15(a)(2) "provides that leave to amend 'shall be freely given when justice so requires,' and it is rare that such leave should be denied, especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal citations omitted). A motion to amend pursuant to Rule 15(a)(2) "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps the most important, the resulting prejudice to the other party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (internal citation and quotation marks omitted). "[L]eave to amend will be denied as futile . . . if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim[.]" *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

### 1. Malicious Prosecution (Count Four).

In Count Four, Defendants seek to add a counterclaim that Mr. Nashef is liable for malicious prosecution, alleging as additional facts that Mr. Nashef has made a series of unsubstantiated and untrue allegations "without probable cause" and "motivated by malicious intent to harm AADCO, [Mr.] Marchione, and [Mr.] Skidmore[.]" (Doc. 32-1 at 14, ¶ 31.) Mr. Nashef counters that the tort of malicious prosecution requires a

---

[5] Defendants move to amend their Verified Counterclaim to add the allegation that "Mr. Nashef filed and served on the defendants a Verified Complaint." (Doc. 32-1 at 12, ¶ 15.) This additional allegation does not alter the court's conclusion that Defendants have failed to state a claim with respect to Count Three.

plaintiff to establish that the legal proceeding in question terminated in his or her favor—a requirement Defendants cannot satisfy.

Under Vermont law, malicious prosecution requires a showing "that a party instituted a proceeding against the individual without probable cause, that the party did so with malice, that the proceeding terminated in the individual's favor, and that the individual suffered damages as a result of the proceeding." *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151 (Vt. 2002) (citing *Chittenden Trust Co. v. Marshall*, 507 A.2d 965, 969 (Vt. 1986)). The Vermont Supreme Court has held that "the termination of the prior proceeding in the malicious prosecution claimant's favor is an 'essential element' of the tort." *Id.* at 151. Because the proceedings that Defendants allege Mr. Nashef instituted without probable cause are ongoing, Defendants cannot now assert a claim for malicious prosecution and any amendment to add this claim would be futile. Defendants' motion to amend to include Count Four is therefore DENIED.

### 2. Negligent Misrepresentation (Count Five).

In Count Five, Defendants seek to add a counterclaim of negligent misrepresentation, alleging that "[i]n applying for and securing employment with AADCO, Mr. Nashef made statements to [Mr.] Marchione and [Mr.] Skidmore that he knew or should have known were false, including, but not limited to, his experience with lighting UL certifications and FDA 510[(k)] determinations." (Doc. 32-1 at 15, ¶ 34.) Defendants assert that they hired Mr. Nashef in reliance on these false representations. Mr. Nashef argues that Count Five must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) and that Rule 9(b) is not satisfied because Defendants have not "specif[ied] how many 'statements' they claim Plaintiff made, when he allegedly made them, and exactly what it is that they allege Plaintiff said that was 'false.'" (Doc. 35 at 7.)

In Vermont, "[a] claim of negligent misrepresentation may be made 'against one who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions, where there is justifiable reliance on the information provided, and where that reliance results in pecuniary loss.'" *Howard*

13

*Opera House Assocs.*, 166 F. Supp. 2d at 927 (alterations omitted) (quoting *McGee v. Vt. Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999)); *see also Sarvis v. Vt. State Coll's.*, 772 A.2d 494, 499 (Vt. 2001) (concluding that "misrepresentation during the hiring process can be a basis for rescission of an employment contract" and that "such misrepresentation can constitute misconduct sufficient to support a just cause dismissal"). The misrepresentation must also have been known to the maker to be false and not open to the defrauded party's knowledge. *See Sherman v. Ben & Jerry's Franchising, Inc.*, 2009 WL 2462539, at *2 (D. Vt. Aug. 10, 2009).

Contrary to Mr. Nashef's contention, the Second Circuit has not required state law claims of negligent misrepresentation to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (noting that the Second Circuit "has not adopted" the view that Rule 9(b) applies "to a state law claim for negligent misrepresentation") (internal citations omitted). Thus, the court will not apply the heightened pleading requirements of Rule 9(b) to Defendants' negligent misrepresentation counterclaim. As a lack of specificity is the sole ground on which Mr. Nashef opposes an amendment to include Count Five and as the proposed counterclaim contains sufficient facts to satisfy Rule 8's pleading standards, Defendants' motion to amend to include Count Five is GRANTED.

### 3. Consumer Fraud (Count Six).

In Count Six, Defendants seek to add a counterclaim that Mr. Nashef is liable under the VCFA, which prohibits unfair and deceptive acts and practices in commerce, because Defendants assert that "Mr. Nashef's conduct . . . constitutes unfair and deceptive acts in commerce and has damaged AADCO." (Doc. 32-1 at 15, ¶ 38.) Specifically, Defendants argue that Mr. Nashef's "misrepresentations as to his experience in lighting UL certification and FDA 510k determination constitute a violation of [the VCFA] pursuant to 9 V.S.A. § 2461 because AADCO contracted for [Mr.] Nashef's services in reliance on his unfair and deceptive representations regarding his experience." (Doc. 30 at 7.) Mr. Nashef first contends that denial of leave to amend is warranted

14

because Defendants' VCFA claim fails to satisfy the heightened requirements of Fed. R. Civ. P. 9(b).

It is unresolved in Vermont whether a claim brought under the VCFA must be pled with specificity. While this court in *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671-72 (D. Vt. 2012), did not ultimately decide the issue, it noted that it is "not likely that the Vermont legislature intended to require a heightened pleading standard for claims for relief under the VCFA," due to the Vermont Supreme Court's holding in *Poulin v. Ford Motor Co.*, 513 A.2d 1168 (Vt. 1986), which "refused to require a statutory consumer fraud claim to satisfy the higher standard of proof by clear and convincing evidence that a common law fraud claim must meet." *Bergman*, 847 F. Supp. 2d at 671-72 (citing *Poulin*, 513 A.2d at 1172 ("The purpose of our Consumer Fraud Act is to protect consumers by adding a claim for relief that is easier to establish than is common law fraud. To require the higher degree of proof would frustrate the legislative intent.") (internal citations omitted)). The court makes a similar prediction here. Nothing in the plain language of the VCFA, its legislative history, or the case law interpreting supports a conclusion that a heightened pleading standard must be satisfied. Such a requirement would be at odds with the remedial nature of the VCFA and the ordinary consumers that it is intended to protect. *See Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 748 (Vt. 1993) (VCFA "provides 'a much broader right than common law fraud.'") (quoting *Poulin*, 513 A.2d at 1171); *see also Goldman v. Town of Plainfield*, 762 A.2d 854, 856 (Vt. 2000) (noting the VCFA has "broad remedial purposes that extend beyond common law fraud or misrepresentation"). The Second Circuit's determination that New York's consumer protection act does not impose this pleading requirement underscores the court's conclusion. *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (concluding that claim under New York's Consumer Protection from Deceptive Acts and Practices Act "need only meet" the requirements of Fed. R. Civ. P. 8 because the Act "extends well beyond common-law fraud to cover a broad range of deceptive practices" and because the Act "does not require proof of the same essential elements . . . as common-law fraud").

Mr. Nashef gains firmer ground in asserting that the VCFA was not intended to create a cause of action for an employer against its own employee for consumer fraud in the provision of services consisting solely of the employee's job performance. Although the Vermont Supreme Court has not yet addressed whether the VCFA applies to an alleged "unfair or deceptive act" committed during the formation of an employment contract and although Count Six is a novel claim for which the court must proceed with caution, see *Antonio*, 2012 WL 4320674, at *9, there is no apparent good faith basis for extending the VCFA to cover the relationship between an employer and an employee.[6]

Section 2461 of the VCFA provides a private right of action to:

> Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title[.]

9 V.S.A. § 2461(b). The VCFA "defines a 'seller' as one who is 'regularly and principally engaged in a business of selling goods or services to consumers.'" *Carter v. Gugliuzzi*, 716 A.2d 17, 21 (Vt. 1998) (quoting 9 V.S.A. § 2451a(c)). The VCFA defines "consumer" as:

> any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household, or in connection with the operation of his or her household or a farm whether or not the farm is conducted as a trade or business, or a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business.

---

[6] The VCFA clearly does not provide an additional claim for an alleged breach of an existing contract. See *Winey*, 636 A.2d at 749 (holding VCFA does not apply to allegations of a breach of "an ongoing contract" because VCFA is concerned with the "elements of contract formation" and "not conduct that is in breach of an existing contract").

16

9 V.S.A. § 2451a(a). Under the VCFA, to "sell" means "'to cause or further the sale of,' '[t]o deal in an article of sale; as, to sell groceries or insurance.'" *Carter*, 716 A.2d at 21 (quoting Webster's New International Dictionary 2272 (2d ed. 1953)).

The typical employment relationship does not involve "consumers," "sellers," or require or permit an employee "to sell" his or her services to an employer. A contrary conclusion would allow for no distinction between employees and independent contractors who may indeed "sell" their "services" to various employers as a regular and principal part of their business and make "false or fraudulent" representations in doing so upon which employers rely to their detriment. The "central provision" of the VCFA declares that "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are . . . unlawful," *Elkins v. Microsoft Corp.*, 817 A.2d 9, 12 (Vt. 2002) (quoting 9 V.S.A. § 2453(a)), and the statute's purpose "is to complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451. Stated another way, "the basic purpose" of the VCFA "is to 'encourage a commercial environment highlighted by integrity and fairness.'" *Vastano v. Killington Valley Real Estate*, 2007 VT 33, ¶¶ 9-10, 182 Vt. 550, 551-52, 929 A.2d 720, 722-23. There is no need to extend this protection to employers vis-à-vis their employees as an employer has a pre-existing remedy of terminating any employee who engages in a material misrepresentation during the hiring process. *See Sarvis*, 772 A.2d at 499 (concluding that "misrepresentation during the hiring process can be a basis for rescission of an employment contract" and that "such misrepresentation can constitute misconduct sufficient to support a just cause dismissal"). Further, there is no evidence that the Vermont legislature sought to augment an employer's remedies in this respect to include a claim of consumer fraud. *See State v. Int'l Collection Serv., Inc.*, 594 A.2d 426, 429 (Vt. 1991) (noting, under a prior version of VCFA that provided a civil remedy for individuals only, that it was "reasonable for the legislature to determine that business persons have adequate private remedies in existing laws, while special, new remedies are necessary to protect individual consumers").

Other state courts interpreting their state's consumer protection statutes have held that do not afford a private remedy for an employer or employee for issues arising out of the employment relationship. *See, e.g., Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 786 (D.N.H. 1994) (holding that the New Hampshire Consumer Protection Act "does not provide a private remedy for 'disputes arising out of the employment relationship between an employer and an employee'") (quoting *Evans v. Certified Eng'g & Testing Co.*, 834 F. Supp. 488, 499 (D. Mass. 1993) (noting that "the Massachusetts Supreme Judicial Court [has] held that disputes arising out of the employment relationship between an employer and an employee are not cognizable under" the Massachusetts Consumer Protection Act) (internal quotation marks and alterations omitted); *see also Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 227-28 (D. Mass. 1990) (noting the Massachusetts Supreme Court decision in *Manning v. Zuckerman*, 444 N.E.2d 1262 (Mass. 1983) "unequivocally established that disputes between employers and employees fall outside the scope of" the Massachusetts Consumer Protection Act).

Based upon the foregoing, the court predicts that the Vermont Supreme Court would not extend the VCFA to the typical employer-employee relationship without a clear directive from the Vermont legislature indicating that the VCFA was intended to extend that far. *See DeCoster*, 653 A.2d at 896 ("We find nothing in legislative history . . . to support a conclusion that the Legislature intended that [the Maine Act] be applicable to the relationship between employers and employees. Our Legislature has acted extensively to regulate the relationship between an employer and an employee but has never implicitly or explicitly in such legislation made the [Maine Act] applicable to labor relations. We decline to act where the Legislature has seen no need to act."). Accordingly, Defendants have not raised a plausible claim for relief under the VCFA, and therefore amendment would be futile. Defendants' motion to amend to include Count Six is DENIED.

## CONCLUSION

For the foregoing reasons, Mr. Nashef's motion for judgment on the pleadings (Doc. 17) is GRANTED with regard to Count Three and DENIED with regard to Count Two. Defendants' cross motion for leave to amend (Doc. 32) is GRANTED with regard to Count Five, and DENIED with regard to Counts Four and Six.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 28th day of May, 2013.

Christina Reiss, Chief Judge
United States District Court